[No. D056988. Fourth Dist., Div. One. June 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY WAYNE SHEROW et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.A., B., E. and F.

**COUNSEL**

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant Timothy Wayne Sherow.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant Timothy Wayne Sherow, Jr.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**IRION, J.**—Timothy Wayne Sherow (Sherow, Sr.) and Timothy Wayne Sherow, Jr. (Sherow, Jr.), were charged in the same information.

The charges against Sherow, Sr., were tried to a jury, which found him guilty on nine counts of burglary (Pen. Code, § 459).[1] Sherow, Sr., admitted a

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

prior strike and eight prior prison terms. (§§ 667.5, subd. (b), 667, subds. (c), (e)(1), 1170.12, subd. (c)(1).) The trial court sentenced Sherow, Sr., to 19 years four months in prison.

Sherow, Jr., pled guilty to 27 counts of burglary (§ 459) and 27 counts of receiving stolen property (§ 496, subd. (a)). The trial court sentenced Sherow, Jr., to six years four months in prison.

Sherow, Sr., contends that (1) the trial court erred in admitting surveillance videos showing him stealing DVD's from Walmart and Sam's Club stores; (2) insufficient evidence supports certain of the burglary convictions; and (3) the trial court erred by instructing the jury, with respect to counts 7 through 10, that Sherow, Sr., had the burden to prove a consent defense to burglary by a preponderance of the evidence. We conclude that the third argument has merit. The trial court committed prejudicial instructional error regarding the consent defense to burglary. Accordingly, we reverse the judgment against Sherow, Sr., on counts 7 through 10.

Sherow, Jr., argues that (1) the imposition of a criminal conviction assessment under Government Code section 70373 was invalid on ex post facto grounds, and (2) his presentence conduct credits under Penal Code section 4019 should be adjusted to reflect the retroactive application of an amendment to section 4019 that became effective after he was sentenced. We reject Sherow, Jr.'s first argument but conclude that the second argument has merit, and therefore modify the judgment to award an additional 64 days of conduct credits to Sherow, Jr., for a total of 128 days of conduct credits.

I

FACTUAL AND PROCEDURAL BACKGROUND

In approximately 2003, Sherow, Sr., began engaging in transactions at the AAA Jewelry & Loan pawnshop in Riverside (the pawnshop), which was managed by Robert Stephen Mann. Sherow, Sr.—always accompanied by a second person—would bring large quantities of DVD's to the pawnshop to sell. The DVD's were new and in the original shrink-wrap packaging.

In 2007, Detective Charles Payne of the Riverside Police Department became suspicious upon reviewing the pawnshop's records, which showed large transactions involving new DVD's. Detective Payne met with Mann, who showed him a storeroom containing 1,230 new boxed sets of DVD's, most of which Mann purchased from Sherow, Sr., and his associates. Mann had received over $100,000 by reselling the new DVD's brought in by Sherow, Sr., and his associates.

On July 31, 2007, Detective Payne and Police Officer Daniel Cisneros conducted visual surveillance of Sherow, Sr. He was first observed with his sister selling 377 DVD's at the pawnshop for $754. Sherow, Sr., then drove to a Ross store in Riverside, where Officer Cisneros observed him taking clothes off the rack, rolling them up, placing them in his pants and then leaving the store without purchasing the clothes. Officer Cisneros next followed Sherow, Sr., to an AJWright store in Riverside where he witnessed Sherow, Sr., steal clothes in the same manner. While Sherow, Sr., was inside a third store, Officer Cisneros placed a tracking device on Sherow, Sr.'s car.

The next day, August 1, 2007, Detective Payne used the tracking device to determine the movement of Sherow, Sr.'s car. Detective Payne determined that the car traveled to a Walmart store in Westminster at 8:46 a.m., a Walmart store in Corona at 9:39 a.m. and a Sam's Club store in Corona at 10:10 a.m. Later that day, Detective Payne observed Sherow, Sr., meet his son Dominique in the parking lot of the pawnshop and hand over a large box of DVD's. Dominique went into the pawnshop with the DVD's and sold 259 DVD's for $518. Dominique emerged a short time later and pulled money out of his pocket, which he divided with Sherow, Sr.

Detective Payne obtained surveillance videos from the Walmart store in Westminster, the Walmart store in Corona and the Sam's Club store in Corona for the time period that the tracking device indicated Sherow, Sr., was in those stores on August 1, 2007. Detective Payne reviewed the videos and observed Sherow, Sr., at each of the stores taking DVD's off the shelves and putting them down his pants.

On August 18, 2007, Detective Payne conducted surveillance of Sherow, Sr., at the pawnshop. He saw Sherow, Sr., enter the pawnshop with a woman he introduced to Mann as his girlfriend. They sold 423 DVD's to Mann for $846.

Police arrested Sherow, Sr., at the pawnshop on September 19, 2007. On that day, Sherow, Sr., entered the pawnshop with 67 boxed sets of DVD's and a homeless man, whom Sherow, Sr., had asked to complete the sales transaction for him using the man's identification.

Sherow, Sr., was charged with several counts of burglary (§ 459). Counts 1 and 2 arose from stealing clothes in the Ross and AJWright stores on July 31, 2007. Counts 4, 5 and 6 arose from stealing the DVD's at the Walmart and Sam's Club stores on August 1, 2007.[2] Counts 7 through 10 alleged that

---

[2] Count 3, which is not at issue in this appeal, alleged a burglary at a Walmart store in Long Beach on August 1, 2007. The trial court entered a judgment of acquittal on that count pursuant to section 1118.1.

Sherow, Sr., committed burglary by entering the pawnshop with the intent to commit theft or a felony on July 31, 2007, August 1, 2007, August 18, 2007, and September 10, 2007.

The same information charged Sherow, Jr., with 27 counts of burglary (§ 459) and 27 counts of receiving stolen property (§ 496, subd. (a)).

The jury convicted Sherow, Sr., on counts 1, 2 and 4 through 10. Sherow admitted prior prison terms and a prior strike, and the trial court sentenced Sherow, Sr., to prison for 19 years four months.

Sherow, Jr., pled guilty and the trial court sentenced him to prison for six years four months.

Both Sherow, Jr., and Sherow, Sr., appeal.

## II

## DISCUSSION

### A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *The Trial Court Erred in Instructing the Jury Regarding the Consent Defense to Burglary*

We next consider Sherow, Sr.'s argument that the trial court improperly instructed the jury regarding consent as a defense to burglary.

██ The offense of burglary is committed when a person enters a building with the intent to commit a felony. (§ 459.) However, a defense to a charge of burglary is available "when the owner *actively* invites the accused to enter, *knowing* the illegal, felonious intention in the mind of the invitee. . . . [T]he owner-possessor must know the felonious intention of the invitee. There must be evidence 'of informed consent to enter *coupled* with the "visitor's" knowledge the occupant is aware of the felonious purpose and does not challenge it.' " (*People v. Felix* (1994) 23 Cal.App.4th 1385, 1397–1398 [28 Cal.Rptr.2d 860], citations omitted (*Felix*).)

Relying on this principle, defense counsel argued to the jury that Sherow, Sr., was not guilty of counts 7 through 10, which charged him with

---

*See footnote, *ante*, page 1296.

burglarizing the pawnshop by entering it with the intent to sell stolen property. According to defense counsel's closing argument, the evidence established that Mann knew that Sherow, Sr., was selling stolen DVD's and consented to him coming into the pawnshop for that purpose.

The form jury instruction for burglary in CALCRIM No. 1700 does not include a consent defense for burglary, although the notes to the instruction point out that "consent by the owner or occupant of property may constitute a defense to burglary." (Judicial Council of Cal., Crim. Jury Instns. (2011) CALCRIM No. 1700, Related Issues, Consent, p. 1226.) Therefore, the trial court drafted its own instruction on the issue after considering proposed instructions from counsel.[4] The instruction given by the trial court stated that Sherow, Sr., had the burden of establishing, by a preponderance of the evidence, the elements of the consent defense. The trial court instructed:

"The defendant is not guilty of burglary if the occupant of the building consented to the defendant's entry into the building.

"In order to establish this defense, the defendant must prove that:

"1. Prior to the defendant's entry into the building, the occupant expressly gave to the defendant the occupant's permission for the defendant to enter the building;

"2. At the time that the occupant give his or her permission, the occupant knew that the defendant intended to enter the building for the purpose either of committing a theft or selling stolen property; and

"3. Prior to the defendant's entry into the building, the defendant knew that the occupant was aware of the defendant's illegal intention.

"The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the three listed items is true."

At trial, defense counsel objected to the jury instruction given by the trial court "based on due process, trial by jury, confrontation, compulsory process

---

[4] Defense counsel proposed the following instruction: "The prosecution must prove all the elements of burglary including that the defendant did not have a right to enter the building. The defendant contends he had a right to enter the premises because the lawful occupant of the building consented to the defendant's entry with knowledge of the defendant's felonious purpose. However the defendant does not need to prove that the occupant consented. If you have a reasonable doubt about whether the prosecution has proven that the defendant entered without consent, you must find him not guilty."

[and] right to counsel clauses" of the state and federal Constitutions. According to defense counsel, the trial court's instruction would have the effect of "eliminating, shifting, or lessening the prosecutor's burden of proof under the presumption of innocence."

■ On appeal, Sherow, Sr., contends that the trial court erred when it "instructed that [Sherow, Sr.,] had to prove consent by a preponderance of the evidence." According to Sherow, Sr., the "affirmative defense of consent involves an element of burglary" and therefore he "need only raise a reasonable doubt about that fact." As we will explain, we agree, and therefore we conclude that the trial court erred in instructing the jury that Sherow, Sr., was required to prove the consent defense to burglary by a preponderance of the evidence.

### 1. The Burden of Proof on the Consent Defense to Burglary Is Allocated to the Defendant

We begin by considering the preliminary issue of who has the burden of proof to establish the consent defense to burglary as described in *Felix, supra,* 23 Cal.App.4th at pages 1397–1398.

■ Unless constitutional principles require otherwise, " '[d]efining the elements of an offense and the procedures, including the burdens of producing evidence and of persuasion, are matters committed to the state.' " (*People v. Neidinger* (2006) 40 Cal.4th 67, 73 [51 Cal.Rptr.3d 45, 146 P.3d 502] (*Neidinger*).) It is constitutionally permissible for the state to place the burden of proving a fact on the defendant unless the fact constitutes a traditional element of an offense. (*Id.* at p. 74.)

■ Case law establishes that the lack of consent to enter the building at issue is *not* an element of burglary. (*Felix, supra,* 23 Cal.App.4th at p. 1397 ["Lack of consent—*by itself*—is *not* an element of the offense."]; *People v. Barry* (1892) 94 Cal. 481, 483 [29 P. 1026] [defendant was properly convicted of burglary of a store during business hours regardless of the fact that the proprietor allowed the defendant to enter the store along with the general public].) Therefore, state law governs the issue of whether the defendant or the prosecution has the burden of proof on the affirmative defense of consent to burglary as described in *Felix, supra,* at pages 1397–1398.

■ With respect to allocating the burden of proof for an affirmative defense, state law provides that "[u]nder the so-called rule of convenience and necessity, ' "the burden of proving an exonerating fact may be imposed on a defendant if its existence is 'peculiarly' within his personal knowledge

and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient." ' " (*People v. Salas* (2006) 37 Cal.4th 967, 981 [38 Cal.Rptr.3d 624, 127 P.3d 40]; see also *Neidinger, supra,* 40 Cal.4th at p. 74 [applying rule of convenience and necessity].) ■ In the case of the consent defense to burglary, it is a matter of proof peculiarly within the knowledge of the defendant whether the occupant of the building at issue (1) actively invited the defendant to enter with knowledge of the defendant's felonious intent, and (2) the defendant knew that the occupant was aware of his felonious intent. (See *Felix, supra,* 23 Cal.App.4th at pp. 1397–1398.) Further, it would be relatively difficult or inconvenient for the prosecution to prove the nonexistence of these facts. Therefore, the defendant has the burden of proof regarding the consent defense to burglary.

2. *The Defendant's Burden of Proof on the Consent Defense to Burglary Is to Raise a Reasonable Doubt as to the Facts Underlying the Defense*

The next issue is "what is required to be done by the party who bears the burden of proof as to the facts underlying the defense"—in this case Sherow, Sr. (*People v. Mower* (2002) 28 Cal.4th 457, 476 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*).) The trial court concluded that Sherow, Sr., was required to prove the facts underlying the consent defense to burglary by a preponderance of the evidence. Sherow, Sr., on the other hand, contends that a defendant raising a consent defense to a burglary charge need only raise a reasonable doubt as to the existence of the facts establishing the defense.

■ "With respect to many defenses, as 'ha[s] been and [is] extremely common in the penal law' (Model Pen. Code & Commentaries, com. 3 to § 1.12, p. 192), a defendant has been required merely to raise a reasonable doubt as to the underlying facts." (*Mower, supra,* 28 Cal.4th at p. 479.) Based on Evidence Code section 501, this rule has been applied where a statute allocates the burden of proof to a defendant on any fact relating to his or her guilt. (*Mower,* at p. 479.)[5] However, the same rule also applies where the

---

[5] Evidence Code section 501 provides: "Insofar as any statute, except Section 522, assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096." As our Supreme Court explained in *Mower,* "The comment to Evidence Code section 501 by the California Law Revision Commission, which proposed that provision, states in pertinent part: '[Evidence Code] Section 501 is intended to make it clear that the statutory allocations of the burden of proof . . . are subject to [section] 1096, which requires that a criminal defendant be proved guilty beyond a reasonable doubt, *i.e.,* that the statutory allocations do not (except on the issue of insanity) require the defendant to persuade the trier of fact of his innocence. Under Evidence Code Section 522, as under existing law, the defendant must prove his insanity by a preponderance of the evidence. [Citation.] *However, where a statute allocates the burden of proof to the defendant on any other issue relating to the defendant's guilt, the defendant's burden, as under existing law, is merely to raise a reasonable doubt as to his*

allocation of the burden of proof to a defendant is *not* based on a statutory provision. (See, e.g., *Mower, supra*, 28 Cal.4th at p. 477 [statute did not allocate any burden of proof].)

■ Our Supreme Court in *Mower* listed numerous examples of cases in which the defendant's burden of proof as to an affirmative defense was to raise a reasonable doubt as to the facts underlying the defense. (*Mower, supra*, 28 Cal.4th at p. 479, fn. 7.)[6] In general, "it is well settled that it is error to instruct the jury that defendant has the burden of proving mitigating circumstances by a preponderance of the evidence." (*People v. Hardy* (1948) 33 Cal.2d 52, 65 [198 P.2d 865].) This is because "[i]t is a cardinal rule in criminal cases that the burden rests on the prosecution to prove the offense beyond a reasonable doubt . . . , and it is error to deprive an accused of the benefit of the doctrine of reasonable doubt by giving an instruction that he has the burden of proving a defense by a preponderance of the evidence." (*Id.* at pp. 63–64, citation omitted.) Further, as our Supreme Court long ago explained in holding that a defendant has the burden to raise a reasonable

guilt.' " (*Mower, supra*, 28 Cal.4th at pp. 478–479, quoting Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 91.)

[6] *Mower* provided the following citations to cases in which the defendant had the burden merely to raise a reasonable doubt as to the facts underlying an affirmative defense: "Included are the defense of alibi (*People v. Costello* (1943) 21 Cal.2d 760, 765–766 [135 P.2d 164] [predating Evid. Code, § 501]); the defense of unconsciousness (*People v. Babbitt* (1988) 45 Cal.3d 660, 689–696 [248 Cal.Rptr. 69, 755 P.2d 253]); the defense of duress (*People v. Graham* (1976) 57 Cal.App.3d 238, 240 [129 Cal.Rptr. 31]); any defense justifying, excusing or mitigating the commission of homicide (*People v. Bushton* (1889) 80 Cal. 160, 164 [22 P. 127] [predating Evid. Code, § 501]); defense of another, against a charge of murder (*People v. Roe* (1922) 189 Cal. 548, 560–561 [209 P. 560] [predating Evid. Code, § 501]); self-defense, against a charge of assault (*People v. Adrian* (1982) 135 Cal.App.3d 335, 337–341 [185 Cal.Rptr. 506]); the defense of reasonable and good faith belief in the victim's consent, against a charge of kidnapping (*People v. Mayberry* (1975) 15 Cal.3d 143, 157 [125 Cal.Rptr. 745, 542 P.2d 1337]); the defense of reasonable and good faith belief in the victim's consent, against a charge of rape (*ibid.*); the defense of intent to marry, against a charge of taking a woman for the purpose of prostitution (*People v. Marshall* (1881) 59 Cal. 386, 388–389 [predating Evid. Code, § 501]); the defense of lawful arrest, against a charge of false imprisonment (*People v. Agnew* [(1940)] 16 Cal.2d [655,] 664–667 [107 P.2d 601] [predating Evid. Code, § 501]); and the defense of exemption under state securities laws, against a charge of violating such laws (*People v. Simon* (1995) 9 Cal.4th 493, 501 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *People v. Figueroa* (1986) 41 Cal.3d 714, 722 [224 Cal.Rptr. 719, 715 P.2d 680])." (*Mower, supra*, 28 Cal.4th at p. 479, fn. 7.)

In *Mower, supra*, 28 Cal.4th at page 481, our Supreme Court applied the reasonable doubt standard to the defendant's defense under Health and Safety Code section 11362.5, subdivision (d) to a charge of possession and cultivation of marijuana based on the theory that the defendant was a primary caregiver of a patient using medical marijuana. Later, in *Neidinger, supra*, 40 Cal.4th at page 79, the reasonable doubt standard was applied to the defendant's defense under section 278.7, subdivision (a) to a charge of child detention in violation of section 278.5, subdivision (a), based on the theory that the defendant acted with a good faith and reasonable belief that the child would be harmed if left in the custody of the person from whom the child was taken.

doubt in a murder case on any defense of mitigation, justification or excuse, "[a]ny other rule as to the weight of the evidence makes one measure applicable to one part of the case and a different one to another part, and leads to confusion." (*People v. Bushton, supra*, 80 Cal. at pp. 164–165.)

However, there is one important exception to the rule giving the defendant the burden to raise a reasonable doubt as to the facts underlying an affirmative defense. For "a handful of defenses . . . the defendant [has] been required to prove the underlying facts by a preponderance of the evidence. Those are defenses that are *collateral* to the defendant's guilt or innocence." (*Mower, supra*, 28 Cal.4th at p. 480, fn. omitted, italics added.) " '[O]n a guilt issue *other than* whether defendant committed the criminal acts charged, the burden of proof assigned to defendant may be fixed at proof by a preponderance of the evidence.' " (*People v. Figueroa, supra*, 41 Cal.3d at p. 722, italics added, quoting 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 45.1, p. 1640.) Put another way, a preponderance of the evidence standard is applicable to "defenses asserted by an accused which raise factual issues collateral to the question of the accused's guilt or innocence and do not bear directly on any link in the chain of proof of any element of the crime." (*People v. Tewksbury* (1976) 15 Cal.3d 953, 964 [127 Cal.Rptr. 135, 544 P.2d 1335] (*Tewksbury*).) Examples of such defenses are the defense of entrapment (*Mower*, at p. 480, citing *People v. Moran* (1970) 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763]); the defense of momentary handling of a controlled substance for the sole purpose of disposal, against a charge of possession of such a substance (*Mower*, at p. 480, fn. 8, citing *People v. Spry* (1997) 58 Cal.App.4th 1345, 1367–1369 [68 Cal.Rptr.2d 691] (*Spry*)); and the defense of necessity against a charge of escape from lawful custody (*Mower*, at p. 480, fn. 8, citing *People v. Waters* (1985) 163 Cal.App.3d 935, 937–938 [209 Cal.Rptr. 661] (*Waters*) and *People v. Condley* (1977) 69 Cal.App.3d 999, 1008–1013 [138 Cal.Rptr. 515] (*Condley*)).[7] These are defenses that "for reasons of public policy insulate the accused notwithstanding the question of his guilt." (*Tewksbury, supra*, 15 Cal.3d at p. 964.)

Conversely, the reasonable doubt standard applies to a defense which, "if established[,] would tend to overcome or negate proof of any element of the crime charged as otherwise established by the People." (*Tewksbury, supra*, 15 Cal.3d at p. 963.) The reasonable doubt standard applies to a defense that is "not entirely collateral to the elements of the offense" (*Neidinger, supra*, 40 Cal.4th at p. 79) and which "relates to the defendant's guilt or innocence" (*Mower, supra*, 28 Cal.4th at pp. 481–482).

---

[7] Although *Mower* cited *Spry, supra*, 58 Cal.App.4th 1345, *Waters, supra*, 163 Cal.App.3d 935, and *Condley, supra*, 69 Cal.App.3d 999, as cases applying a preponderance of the evidence burden of proof, *Mower* made clear that it was not reaching the question of whether those cases were correctly decided. (*Mower, supra*, 28 Cal.4th at p. 480, fn. 8.)

We turn to an application of these standards to determine a defendant's burden of proof in establishing an affirmative defense to burglary as set forth in *Felix, supra*, 23 Cal.App.4th at pages 1397–1398.

According to statute, a person is guilty of burglary if he or she enters a building or other structure listed in the statute with intent to commit grand or petit larceny or any felony. (§ 459.) Based on common law precedent, our Supreme Court has clarified the statutory element of "entry" by explaining that the crime of burglary involves "entry that invades a possessory right in a building, and must be committed by someone who has no right to be in the building." (*People v. Frye* (1998) 18 Cal.4th 894, 954 [77 Cal.Rptr.2d 25, 959 P.2d 183]; see also *People v. Gauze* (1975) 15 Cal.3d 709, 714 [125 Cal.Rptr. 773, 542 P.2d 1365] (*Gauze*) ["section 459, while substantially changing common law burglary, has retained two important aspects of that crime. A burglary remains an entry which invades a possessory right in a building. And it still must be committed by a person who has no right to be in the building."].)[8] On the premise that the type of entry involved in burglary is the invasion of a possessory right by someone who has no right to be in the building for illegal purposes, case law has developed the consent defense to burglary. (*Felix, supra*, 23 Cal.App.4th at p. 1398 [relying on requirement of an invasion of a possessory right in formulating the consent defense to burglary]; *People v. Superior Court (Granillo)* (1988) 205 Cal.App.3d 1478, 1485 [253 Cal.Rptr. 316] [relying on the principle that "burglary law is designed to protect a possessory right in property against intrusion and the risk of harm" in determining that burglary is not committed by a defendant selling stolen property in an undercover officer's apartment at the officer's invitation].)

 Premised on the foregoing, we conclude that the consent defense to burglary, based on the occupant's consent to the defendant's entry into the building for the purpose of committing a felony, relates to the defendant's guilt or innocence and is not entirely collateral to the elements of burglary. (*Neidinger, supra*, 40 Cal.4th at p. 79; *Mower, supra*, 28 Cal.4th at pp. 481–482.) As we have explained, the defense arises out of the principle that the element of *entry* referred to in the burglary statute must invade a possessory right in a building and must be committed by a person who has no right to be in the building for the purpose of committing illegal acts. Indeed, as our Supreme Court has observed, "[l]ack of consent [is] material to burglary because it [is] material to the element of entry . . . ." (*People v. Waidla* (2000) 22 Cal.4th 690, 723 [92 Cal.Rptr.2d 396, 996 P.2d 46].)

---

[8] Although *Gauze* explained that burglary must be committed by someone who has no right to be in the building, it clarified that it was referring to a right to be in the building *for illegal purposes*. (*Gauze, supra*, 15 Cal.3d at p. 713 [citing the principle that "a person has an implied invitation to enter a store during business hours for legal purposes only"].)

The consent defense therefore goes to the heart of a defendant's guilt or innocence of the crime of burglary. Accordingly, a defendant has the burden of proof to establish a reasonable doubt as to the facts underlying the defense. More specifically, in this case, Sherow, Sr., had the burden to raise a reasonable doubt as to whether (1) Mann actively invited Sherow, Sr., to enter the pawnshop, (2) knowing of Sherow, Sr.'s felonious intention to sell stolen property, and (3) Sherow, Sr., was aware that Mann knew of his intention to sell stolen property and did not challenge it. (See *Felix, supra,* 23 Cal.App.4th at pp. 1397–1398.)

The trial court did not so instruct the jury and therefore erred in instructing the jury that Sherow, Sr., had the burden to prove the consent defense to burglary by a preponderance of the evidence.

### D. *The Instructional Error Was Prejudicial*

Having concluded that the trial court erred in instructing regarding defendants' burden of proof on the consent defense to burglary, we must determine whether the error was prejudicial.

Our Supreme Court repeatedly has declined to decide whether an instructional error regarding the defendant's burden of proof on an affirmative defense is one of federal constitutional dimension that necessitates application of the *Chapman* test for reversible error *(Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]), or is susceptible to analysis under the more lenient test for state law error set forth in *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] *(Watson).* (See *Neidinger, supra,* 40 Cal.4th at p. 79; *Mower, supra,* 28 Cal.4th at p. 484; *People v. Simon, supra,* 9 Cal.4th at p. 506.) In each case where the issue was presented, our Supreme Court determined that the error was prejudicial even under the more lenient standard. *(Neidinger,* at p. 79; *Mower,* at p. 484; *Simon,* at p. 506.) As we will explain, we reach the same conclusion here.

The evidence relevant to the consent defense to burglary was presented through Mann's testimony and through the details brought out during trial about the sales transactions in the pawnshop involving the DVD's.

The evidence concerning the transactions was that Sherow, Sr., and his associates sold to Mann thousands of new DVD's in their original store packaging over the course of several years, on a regular basis and in large batches. On the paperwork that Sherow, Sr., and his associates filled out when selling the DVD's, they often indicated that the DVD's were gifts. One witness testified to hearing Mann suggest to Sherow, Sr., the type of movies that he would like Sherow, Sr., to bring to the pawnshop. Mann had a motive

to buy stolen DVD's, as he resold the DVD's that he purchased from Sherow, Sr., and his associates for over $100,000, at a price of at least double what he paid for them. The jury was informed that Mann was testifying under immunity from criminal prosecution.

Mann was questioned about his knowledge that the DVD's were stolen. Defense counsel elicited the following testimony from Mann regarding the DVD's brought in by Sherow, Sr., and his associates:

"[Defense counsel]: Are you telling us now that you had no idea that these were stolen?

"[Mann]: It occurred to me.

"[Defense counsel]: It did?

"[Mann]: Yes

"[Defense counsel]: You thought it might be stolen?

"[Mann]: I didn't think one way or the other. It occurred to me, how do you acquire that many sets?"

Later in his testimony, Mann stated that he did not ask Sherow, Sr., or his associates about the source of the DVD's, but "[o]f course it occurred to me. No one gets that many gifts."

Also, although not dispositive of the strength of the evidence regarding the consent defense to burglary, it is worth noting that the trial judge—who was present during the live trial testimony and able to observe the witnesses' demeanor—viewed that evidence as being very strong. Specifically, while discussing jury instructions outside the presence of the jury, the prosecutor asserted that "there is no evidence that any of the defendants [(i.e., Sherow, Sr., and his associates)] knew that Mr. Mann knew what they were doing was felonious." The trial court responded, "Oh, sure they did. . . . Was there any direct testimony of that? Of course not. Do I have any doubt of that fact? None whatsoever. Could I think that the jury has any doubt of that fact? I don't think any whatsoever." Later during that discussion the trial court explained, ". . . I think there's enough for the jury to infer circumstantially that [Mann] knew they were stolen . . . ."

We also know that the jury was focused during deliberations on the issue of whether Mann knew that the DVD's were stolen. The jury sent a note

asking: "Does Mann know the DVD's are stolen if asked by the police to continue buying them from [Sherow, Sr.,] from July to Sept[ember] 19, [20]07."

Under the standard set forth in *Watson*, the inquiry is whether there is a reasonable probability that the result would have been more favorable to Sherow, Sr., in the absence of the error. (*Watson, supra,* 46 Cal.2d at p. 836.) In light of the facts recited above, we conclude that it is reasonably probable that had the jury been instructed that Sherow, Sr., was required merely to raise a reasonable doubt about Mann's consent to him entering the pawnshop to sell stolen property, rather than proving those facts by a preponderance of the evidence, there is a reasonable probability that the jury would have determined that there were reasonable doubts as to the underlying facts of the defense. The details of the sales transactions were highly suspicious, a witness heard Mann instruct Sherow, Sr., on the types of DVD's to bring in, and Mann himself admitted that it had occurred to him that the DVD's might be stolen.

Therefore, if given the correct instruction, we conclude that there is a reasonable probability that a jury would have found that Sherow, Sr., created a reasonable doubt as to whether (1) Mann actively invited Sherow, Sr., to enter the pawnshop, (2) knowing of Sherow, Sr.'s felonious intention to sell stolen property, and (3) Sherow, Sr., was aware that Mann knew of his intention to sell stolen property and did not challenge it.[9]

We therefore reverse the judgment against Sherow, Sr., on counts 7 through 10.

E., F.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Sherow, Sr.'s conviction on counts 7, 8, 9 and 10 is reversed. The judgment as to Sherow, Jr., is modified to award 128 days of conduct credit

---

[9] Sherow, Sr., also challenges the sufficiency of the evidence to the elements of burglary, arguing that the only finding a reasonable juror could reach is that Mann consented to Sherow, Sr., entering the pawnshop to commit a felony. However, as we have explained, the lack of consent is not an element of burglary that must be established by the prosecution. (*Felix, supra,* 23 Cal.App.4th at p. 1397.) Instead, consent is an affirmative defense on which the defendant has the burden of proof. (Pt. II.C.1., *ante*.) Accordingly, we reject Sherow, Sr.'s attempt to challenge the sufficiency of the evidence in support of the burglary conviction.

[*]See footnote, *ante*, page 1296.

instead of 64 days, and the trial court is directed to prepare an amended abstract of judgment for Sherow, Jr., and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects the judgments as to Sherow, Sr., and Sherow, Jr., are affirmed.

Huffman, Acting P. J., and Nares, J., concurred.